UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CRIMINAL ACTION NO. 02-111-JMH
(Civil Action No. 08-7034-JMH)

UNITED STATES OF AMERICA,                                          PLAINTIFF

V.                         **MEMORANDUM OPINION AND ORDER**

GREGORY DAVIS,                                                     DEFENDANT

\* \* \* \* \* \* \* \* \* \*

# I.  INTRODUCTION

This matter is before the court on the *pro se* motion of defendant Gregory Davis ("Davis"), filed pursuant to 28 U.S.C. § 2255, to vacate, set aside, or correct his sentence imposed in the above-styled action on January 13, 2006.  This motion has been fully briefed and is ripe for review.

# II.  FACTUAL AND PROCEDURAL BACKGROUND

On September 5, 2002, a federal grand jury returned a two-count indictment against Davis, charging him with two violations of 18 U.S.C. §§ 111(a)(1) and (b).  Specifically, Count 1 charges that on or about July 31, 2002, Davis did forcibly assault, resist, oppose, impede, intimidate, and interfere with Deputy United States Marshal Roger Daniel while Daniel was engaged in the performance of official duties, and in so doing, did use a deadly and dangerous weapon, that is a motor vehicle, all in violation of 18 U.S.C. §§ 111(a)(1) and (b); Count 2 charges that on or about July 31, 2002, Davis did forcibly assault, resist, oppose, impede, intimidate, and interfere with Special Deputy United States Marshal Anthony Schweighardt, III, while Schweighardt was engaged in the performance of official duties, and in so doing, did use a deadly and dangerous weapon, that is a motor vehicle, all in violation of 18 U.S.C. §§ 111(a)(1) and (b).

Davis pled not guilty to these charges, proceeded to trial on October 20, 2003, and on October 21, 2003, a jury found Davis guilty on both counts of the indictment.

On December 19, 2003, Davis was sentenced and received a 120-month sentence on Count 1 and a consecutive 70-month sentence on Count 2, for a total sentence of 190 months, to be followed by a three-year term of supervised release. [DE #110].  Davis, *pro se*, filed a direct appeal of his conviction and sentence.  In an unpublished opinion rendered on October 31, 2005, the Sixth Circuit Court of Appeals affirmed his conviction but remanded for re-sentencing based on *United States v. Booker*, 543 U.S. 220 (2005), which changed the Sentencing Guidelines from being mandatory guidelines to advisory guidelines for the court to follow when imposing a sentence.

Davis was re-sentenced on January 13, 2006, and received the same sentence as originally imposed, a 120-month sentence on Count 1 and a consecutive 70-month sentence on Count 2, for a total sentence of 190 months, to be followed by a three-year term of supervised release. [DE #148].  Davis appealed his resentencing.  In an unpublished opinion rendered on June 1, 2007, the Sixth Circuit Court of Appeals affirmed his sentence.  The mandate issued on September 1, 2007.

On or about August 28, 2008, Davis filed the present § 2255 motion to vacate, set aside, or correct his sentence imposed on January 13, 2006.  [DE #194].

### III.   THE MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE

As grounds for his § 2255 motion, Davis contends at Ground One, that the court's failure to instruct the jury that a motor vehicle was a deadly and dangerous weapon was, in effect, a constructive amendment to the indictment, resulting in his being convicted of an offense for which he was not charged, in violation of the Fifth Amendment.  Davis also asserts, at Ground Two, that he was erroneously subjected to the wrong Sentencing Guideline and that the court erred by enhancing his sentence pursuant to U.S.S.G. § 2A2.2.  In Ground Three of his § 2255 motion, Davis alleges that he has discovered evidence that the two Deputy United States Marshals who were the victims herein were engaged in a "personal frolic" in violation of his Fourth Amendment rights.  Davis also claims at Ground Four that his counsel was ineffective for not requesting an "excessive use of force" jury instruction.  In Ground Five, Davis charges that the United States withheld videotapes of witnesses who would have contradicted the charges that he had violated 18 U.S.C.

§111; and at Ground Six, Davis claims that his sentence was erroneously enhanced under 18 U.S.C. § 111(b).

In response to the motion to vacate, the United States contends that all of petitioner's claims are without merit and that the § 2255 motion should be denied.

## A.     The "omitted" motor vehicle jury instruction

Davis raises three grounds based on his contention that the trial court "omitted the element of the motor vehicle" from the jury instructions when defining the elements of 18 U.S.C. § 111(a)(1) and (b) and that his trial counsel was ineffective for not raising the issue. In Ground One, Davis claims that this omission permitted the jury to convict him "absent the use of the motor vehicle" and that this was a "constructive amendment of the indictment." In Ground Two, Davis claims that this "omission" subjected him to the wrong sentencing guideline under U.S.S.G. § 2A2.2 and numerous enhancements "related to the motor vehicle." In Ground Six, Davis claims that this "omission" erroneously subjected him to an enhanced penalty under 18 U.S.C. § 111(b) "for using a motor vehicle."

### Analysis

Davis was charged under 18 U.S.C. § 111(a)(1) and (b) with two counts of forcibly assaulting, resisting, opposing, impeding, intimidating, and interfering with two Deputy U.S. Marshals while they were engaged in the performance of official duties, and in so doing, did use a deadly and dangerous weapon, *viz.*, in this case, a motor vehicle.

The trial court instructed the jury concerning the burden of proof required to convict under 18 U.S.C. § 111(a)(1) and (b), as follows:

### INSTRUCTION NO. 11

The defendant, Gregory Davis, is charged in Count One under Title 18, United States Code, Section 111(a)(1) and (b), with forcibly assaulting, resisting, opposing, impeding, intimidating, and interfering with Deputy United States Marshal Roger Daniel while Daniel was engaged in the performance of his official duties and, in so doing, the defendant did use a deadly and dangerous weapon, **that is a motor vehicle**.

3

The defendant is charged in Count Two under Title 18, United States Code, Section 111(a)(1) and (b), with forcibly assaulting, resisting, opposing, impeding, intimidating, and interfering with Special Deputy United States Marshal Anthony Schweighardt while Schweighardt was engaged in the performance of his official duties and, in so doing, the defendant did use a deadly and dangerous weapon, **that is a motor vehicle**.

## INSTRUCTION NO. 12

Title 18, United States Code, Section 111(a)(1) and (b) reads in pertinent part "Whoever forcibly assaults, resists, opposes, impedes, intimidates, and interferes with any person designated in Section 1114 of this title while engaged in the performance of their official duties" and (b), "Whoever in the commission of any acts described in Subsection (a) uses deadly or a dangerous weapon shall be guilty of an offense against the United States."

## INSTRUCTION NO. 13

There are three essential elements to the crimes charged in Counts One and Two of the indictment, each of which the United States has to prove beyond a reasonable doubt.

One: The defendant did forcibly assault, resist, oppose, impede, intimidate, or interfere with an officer or employee of the United States with a deadly or dangerous weapon.

Two: The assault, resisting, opposing, impeding, intimidating, or interfering was done voluntarily and intentionally.

Three: That at the time of the alleged offense, the officer or employee of the United States was doing what he was employed to do by the federal government.

An "assault" is any intentional and voluntary attempt to threat to do injury to the person of another when coupled with the apparent present ability to do so sufficient to put the person against whom the attempt is made in fear of immediate bodily harm.

"Forcibly" means by use of force. Physical force is sufficient. You may also find that a person who, in fact, has the present ability to inflict bodily harm upon another and who threatens or attempts to inflict bodily harm upon another and who threatens or attempts to inflict bodily harm upon such person acts forcibly. In such case, the threat must be a present one.

A "deadly and dangerous weapon" is an object used in a manner likely to endanger life or inflict serious bodily harm.

## INSTRUCTION NO. 15

Title 18, United States Code, Section 111(a)(1) and (b) lists alternative ways to commit the offense. In other words, it is an offense for anyone to forcibly assault or forcibly resist or forcibly oppose or forcibly impede or forcibly intimidate or forcibly

interfere with an officer or employee of the United States while engaged in the performance of official duties.  Any of the prescribed acts represents a separate crime, and it is only necessary for the United States to prove beyond a reasonable doubt one of the prescribed acts.

## INSTRUCTION NO. 16

Title 18, United States Code, Section 111(b) makes it an offense for anyone to use a deadly or dangerous weapon in committing any of the acts described in Title 18, United States Code, Section 111(a)(1).  **A motor vehicle is a dangerous weapon – is a dangerous or deadly weapon if it is used in a way that is capable of causing death or serious bodily injury.**

## INSTRUCTION NO. 18

In your deliberations on both counts of the indictment, you must first decide whether the United States proved beyond a reasonable doubt that the defendant forcibly assaulted, resisted, opposed, impeded, intimidated, and interfered with the named officers while they were engaged in the performance of their official duties and, in so doing, used deadly or dangerous weapon.

[Jury Trial, TR (Vol. 11) at 75-79].  (emphasis added).

The trial record reflects that the only evidence the United States presented to the jury to prove the charges contained in the indictment against Davis was that the dangerous weapon used by Davis was his motor vehicle.  As the prosecutor told the jury during closing argument:

Now, as Your Honor has told you, this is a two-count indictment charging an **assault with a deadly weapon or dangerous weapon, that being a van,** of two marshals, one a special deputy marshal.

He will also instruct you that there are two ways that you can convict.  You have to first decide whether or not if he did, in fact, commit this offense, did he do it with **the use of a dangerous weapon, that being the automobile.  His Honor will instruct you that an automobile is a dangerous weapon if you use it in such a manner that would inflict bodily harm on somebody or if somebody has a reasonable fear that you're going to be hurt with this car coming at you.  That makes it a deadly weapon.**

If you find that he did not use the automobile as a deadly weapon, you still have to go on and decide if he forcibly resisted, impeded, intimidated, or interfered with his arrest, if he interfered with those officers in a forcible way.  And that's the issues that you have before you.   And again, I will tell you that, you know, it's two separate counts, so you have to consider it separately.

[Trial Transcript, James Arehart, TR (Vol. II) at 50].  (emphasis supplied).

Thus, it is clear from the evidence, the arguments, and the jury instructions that the jurors knew that in order to convict Davis of using a deadly and dangerous weapon in committing the offenses charged, they had to find that Davis used his motor vehicle in a way that was capable of causing death or serious bodily injury. There was no omission of the motor vehicle from the jury instructions. The essential element of use of a dangerous weapon was proven by establishing that Davis used his motor vehicle in a way capable of causing death or serious bodily injury. Therefore, there was no constructive amendment of the indictment.

Since the jury found Davis guilty of having violated 18 U.S.C. § 111(a)(1) and (b) for assault with the use of a deadly or dangerous weapon [*See* Trial Transcript, TR (Vol. II) at 88-89], Davis was properly sentenced under the enhanced penalty under § 111(b). Likewise, his Base Offense Level was properly enhanced under U.S.S.G. § 2A2.2(b)(2)(B). [*See* PSI at paragraph 19 and Addendum at 24]. Therefore, his trial counsel could not have been ineffective for not raising any issues relating to the instructions or the sentencing guidelines as they pertain to the use of a dangerous weapon, *viz.*, a motor vehicle in this case. Additionally, his trial counsel **did object** at sentencing to the application of U.S.S.G. § 2A2.2. [PSI Addendum, Objection #1, TR (Sentencing) at 5-7].

Furthermore, the three issues Davis raises in Grounds One, Two, and Six of his § 2255 motion were available and could have been raised on direct appeal. However, since Davis proceeded *pro se* on direct appeal, he cannot claim that his counsel was ineffective for failure to raise these issues on appeal. [See, *United States v. Davis,* Sixth Circuit Case No. 04-5003, Order dated October 31, 2005]. Moreover, in a subsequent appeal to the Sixth Circuit, *United States v. Davis,* Appeal No. #06-5227, the Sixth Circuit held that the four-level enhancement for use of a motor vehicle as a dangerous weapon was proper. [See Order dated July 1, 2007, in Case No. 06-5227].

For all of the foregoing reasons, the court concludes that the claims Davis raises in Grounds One, Two, and Six of his § 2255 motion are without merit.

**B.      "Excessive use of force" jury instruction**

In Ground Four of his § 2255 motion, Davis claims that his counsel was ineffective for failing to request "an excessive use of force theory instruction . . . that self-defense in the face of excessive use of deadly force by federal Marshals was affirmative defense . . ."

The record reflects that Davis did present a self-defense theory as a defense to the charges. He testified that he thought the two Deputy U.S. Marshals were strangers who were trying to rob him, that they shot him several times and that he was ". . . thinking, hey, this guy is gonna, you know, finish me off." [Gregory Davis, TR (Vol. II) at 26-28]. He offered this testimony to explain why he acted the way he did in trying to escape. In closing argument, defense counsel clearly argued that Davis acted in self-defense precipitated by being shot ten times and that "the only choice he had to do was what he did" and that he "felt he had no alternative to do what he did, and that was to act in self-defense." [Derek Gordon, TR (Vol. II) at 58-62]. Concerning the use of deadly force by the Marshals, his counsel argued that:

> . . . The other instruction somewhat mirrors it, "A person is entitled to defend himself against the immediate use of **unlawful force**. However, the force used in self-defense must be reasonable." So if some guy comes at you with a toothpick, you can't pull your gut out and kill him. You can't do that. But if a guy is shooting you, well, that's deadly force. You're allowed to use whatever force is necessary to protect yourself. And I submit to you, in those circumstances, what else could he have done? He wanted out of there. He wanted the heck out of there. And he got out of there, thank God.
>
> For you to find him guilty, the government must prove that it was not reasonable for him to think that the force that he used was necessary to defend himself against this threat. So if you believe that the force he was using against this shooting was reasonable, then you must find him not guilty; otherwise, then you can find him guilty.

*Id.* at 62-63. (emphasis added).

Concerning self-defense/"excessive use of force" issue, the court instructed the jury:

> One of the questions in this case is whether the defendant acted in self-defense. A person is entitled to defend himself against the immediate use of **unlawful force**. But the right to use force in self-defense is limited to using only as much force as reasonably appears to be necessary under the circumstances.

7

The government has the burden of proving that the defendant did not act in self-defense.  Unless the government proves this beyond a reasonable doubt, you must find him not guilty.

[Court, TR (Vol. II) at 80-81].  (emphasis added).

Although, as seen above, both defense counsel and the trial court used the phrase "unlawful force" instead of the phrase "excessive use of force," the evidence Davis presented about being shot ten times amounted to the equivalent of "excessive use of force," regardless of whether it was labeled "unlawful force" or "excessive use of force."   The jury instructions referred to the "immediate use of unlawful force" which is also equivalent to the "excessive use of force."  Thus, the use of the word "unlawful" instead of the word "excessive" is of no significance in respect to defendant's claim of self-defense.  In this case, the facts presented to the jury would be the same for an "excessive use of force" defense as for an "unlawful use of force" defense.

A seminal question in any self-defense claim involving a law enforcement officer is the defendant's knowledge of the identity of the victim.  *United States v. Feola*, 420 U.S. 671, 686 (1975).  Thus, in this case, it was important to determine whether Davis knew that the assault victims, the two Deputy U.S. Marshals, were law enforcement officers.  Although Davis testified that he thought the two Marshals were strangers trying to rob him, there was strong evidence that Davis knew the identity of the Marshals.  This evidence was strong enough for the trial court to express doubts about whether Davis was entitled to a self-defense instruction:

THE COURT: Now, getting back to the . . . self-defense instruction.  Whether the defendant acted in self-defense . . . I'm not sure that needs to be given in view of the testimony I heard.

[Court, TR (Vol. II) at 43-44].

Nevertheless, out of an abundance of caution to the defendant's rights, the trial court gave a self-defense instruction.  Quite simply, the jury simply did not believe, based on all of the evidence, that Davis acted in self-defense, regardless of his testimony otherwise.  No reasonable jury could have found that Davis was justified driving his car at the Deputy U.S. Marshals under the facts of this case when the Marshals were attempting to arrest Davis on an outstanding federal arrest

8

warrant.  See *United States v. Plummer*, 789 F.2d 435 (6th Cir. 1986).  Consequently, the court concludes that defense counsel was not ineffective for not seeking a jury instruction using the precise phrase "excessive use of force."

**C.      Withholding of "contradicting" witness interviews by the United States**

In Grounds Three and Five of his § 2255 motion, Davis alleges that post-trial, he has learned that the United States withheld audio/videotaped statements of three witnesses that contradicted the U.S. Marshals' testimony and  that these undisclosed statements established a "personal frolic" by the U.S. Marshals.  Davis identifies these three witnesses as Lonnie Moore, Danielle Smith, and Nancy Louise O'Geary Smith.  Davis claims that the United States was in possession of the video/audio tapes of these three witnesses in October of 2003 at trial, but withheld this "contradictory evidence."

Davis bases this allegation on information he received pursuant to a request made under the Kentucky Open Records Act.  In particular, he points to a letter dated July 16, 2008, from the Lexington Division of Police stating that certain unidentified items previously in possession of the Lexington Police Department were transferred to federal jurisdiction.  However, the letter also states that there were no records pertaining to when and to whom these items were sent. [*See* Davis Attachment #8701].

Based on the statement in this letter that the Lexington Police Department has no record of where and to whom these items were sent when they were transferred to federal jurisdiction, the court concludes that Davis has not established that the United States withheld any "contradictory" witness statements.  Additionally, in the response filed by the United States to Davis's § 2255 motion, its counsel, the prosecutor in this case, Assistant United States Attorney James E. Arehart, states that at trial, he was unaware of any such video/audio tapes of the three witnesses in question and that as of the date of the filing of the response to Davis's § 2255 motion, the United States still has not received any such video/audio tapes.  It is clear that the United States could not have

9

withheld any evidence which it did not possess or any evidence of which is was unaware at the time of trial.

Consequently, for all of the foregoing reasons, the court concludes that defendant's claim that

the United States withheld certain evidence, *viz.,* audio/videotaped statements of three witnesses that contradicted the U.S. Marshals' testimony and  that these undisclosed statements established a "personal frolic" by the U.S. Marshals is without merit.

## IV.  CONCLUSION

Based on a review of the record and the applicable law governing motions filed pursuant to 28 U.S.C. § 2255, to vacate, correct, or set aside sentence, for the reasons previously stated, the court  concludes that Davis's § 2255 motion should be denied.

Accordingly, **IT IS HEREBY ORDERED** that the motion of defendant Gregory Davis filed under 28 U.S.C. § 2255, to vacate, correct or set aside sentence [DE #194] is **DENIED**, and this action is **DISMISSED** and **STRICKEN** from the docket.

This 19th day of March, 2010.



Signed By:

*Joseph M. Hood*

Senior U.S. District Judge